# IN THE SUPREME COURT OF CALIFORNIA

In re GERALD JOHN KOWALCZYK

on Habeas Corpus.

S277910

First Appellate District, Division Three
A162977

San Mateo County Superior Court
21-SF-003700-A

April 30, 2026

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Evans, and Wiley* concurred.

Justice Groban filed a concurring opinion, in which Justices Liu and Evans concurred.

Justice Wiley filed a concurring opinion.

---

* Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re KOWALCZYK

S277910


Opinion of the Court by Guerrero, C. J.


Our state and federal laws generally presume that a person charged with a crime will not be detained prior to trial. The California Constitution has recognized a right to release on bail since 1849. (Cal. Const. of 1849, art. I, § 7.) Our state Constitution continues to guarantee such a right, providing that a defendant "shall be released on bail by sufficient sureties," subject to specifically delineated exceptions. (Cal. Const., art. I, § 12 (section 12).) For noncapital offenses, these exceptions are set forth in subdivisions (b) and (c) of section 12, which limit the right to release on bail in certain felony cases involving violence, sexual assault, or threats of great bodily harm where a court makes required findings by "clear and convincing evidence" of a "substantial likelihood" of specified harms if the defendant is released. (§ 12, subds. (b), (c).) As it has since 1849, section 12 also prohibits the requiring of excessive bail.

This court has previously addressed the operation of our state's system of bail and the implications of how bail determinations have evolved over time. In *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*), we recognized the reality in California that many criminal defendants who might otherwise be entitled to pretrial release were nonetheless being detained " 'solely because' the arrestee 'lacked the resources' to post bail." (*Id*. at p. 143.) In *Humphrey*, we held that the common practice of detaining criminal defendants based solely on their financial condition violated state and federal equal protection and due

1

process principles.  To protect against this violation, we held that courts may not condition release on posting bail unless they "consider an arrestee's ability to pay alongside the efficacy of less restrictive alternatives" to money bail.  (*Id*. at p. 152.)  We also held that while constitutional principles did not "categorically prohibit the government from ordering pretrial detention, . . . '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.' " (*Id*. at p. 155.)

We left some questions unresolved in reaching our holding in *Humphrey*.  We did not decide whether section 12 "can or should be reconciled" with a more recently amended provision of our Constitution, article I, section 28, subdivision (f)(3) (section 28(f)(3)).  (*Humphrey*, *supra*, 11 Cal.5th at p. 155, fn. 7.) Section 28(f)(3) also pertains to bail and provides in part, "A person *may* be released on bail by sufficient sureties" for noncapital offenses.  (Italics added.)  It also mandates that, in making bail determinations, "[p]ublic safety and the safety of the victim shall be the primary considerations."  (*Ibid*.) Consistent with section 12, section 28(f)(3) also prohibits the requiring of excessive bail.

We granted review in this matter to consider the question regarding the two state constitutional bail provisions (§ 12, subds. (b), (c) and § 28(f)(3)) we reserved in *Humphrey*, and to resolve a conflict that has arisen in the Courts of Appeal in the wake of that decision concerning whether it is ever constitutionally permissible for a trial court to set bail above a defendant's ability to pay.

We conclude that section 12, subdivisions (b) and (c) and section 28(f)(3) can be reconciled in the following manner:  In

noncapital cases, a trial court has the authority to deny bail only as to offenses specified in section 12, subdivisions (b) and (c). Section 28(f)(3) refers to the possibility that a defendant "may" be released on bail and mandates that a trial court place primary importance on public and victim safety in making bail determinations. However, section 28(f)(3) does not expand the list of offenses for which release on bail may be denied beyond those delineated in section 12, subdivisions (b) and (c).

In response to the second question, we conclude that a court must set pretrial bail in an amount that is reasonable given a noncapital defendant's constitutional right to release on bail pending trial, the purposes of bail, and the defendant's individual circumstances — which, as a general matter, means that bail must be set in an amount reasonably attainable for the defendant. This response is largely dictated by our holding in *Humphrey* that equal protection and due process principles prohibit the detention of criminal defendants based solely on their indigency. To this end, where pretrial detention is not warranted under section 12, subdivisions (b) or (c), and a court finds it necessary to condition pretrial release on posting monetary bail, a court must set bail in a reasonable amount based on an individualized assessment of the totality of the circumstances. These circumstances include "the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings." (*Humphrey*, *supra*, 11 Cal.5th at p. 152.) The totality of the circumstances also includes a defendant's financial situation and resources available to satisfy a monetary bail order. This does not mean that bail may only be set in an amount that is easily affordable

or convenient to the defendant, or that the court must accept unsupported, conclusory assertions of indigency or an inability to pay. Rather, consistent with our constitutional framework regarding bail determinations and our prior precedent, bail must generally be set in an amount that is reasonably attainable, in order to effectuate the defendant's constitutional right to pretrial release on bail.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2021, petitioner Gerald John Kowalczyk entered a fast-food restaurant to buy a hamburger. Petitioner tried to use six credit cards, three of which belonged to people who had lost them. After the first five credit cards were declined, petitioner discarded them on the floor. When the sixth credit card was approved, petitioner received a hamburger. He then sought a refund, which the restaurant manager declined to issue. Petitioner left the restaurant without the hamburger and was subsequently taken into custody. The People filed a complaint charging petitioner with felony vandalism (Pen. Code, § 594, subd. (b)(1)), three counts of felony identity theft (*id.*, § 530.5, subd. (a)), one count of misdemeanor identity theft (*id.*, § 530.5, subd. (c)(1)), and one count of misdemeanor petty theft of lost property (*id.*, § 485). At his arraignment, the trial court denied petitioner's motion to be released from custody on his own recognizance and set bail at $75,000.

Petitioner filed a written motion seeking release on his own recognizance subject to certain conditions, or, in the

---

[1] The general framework governing the setting of pretrial bail which we outline in this opinion does not address marginal hypothetical scenarios which are not before us (see, e.g., fn. 21, *post*).

alternative, a lowering of his bail. He argued that he was indigent, did not pose a danger to the victims or the community, and posed a minimal flight risk.

At the hearing on the motion, the People requested that bail remain set at $75,000. The prosecutor referenced petitioner's lengthy criminal history and argued that "less restrictive nonfinancial conditions of release" would not be sufficient to protect the public. The trial court denied petitioner's motion, noting that petitioner had suffered 64 prior convictions and had failed to comply with supervision while released on his own recognizance within the past five years.[2] The court also stated it had concerns about whether petitioner would appear at future court proceedings, noting that petitioner had convictions in multiple counties and several states. Rather than leaving bail at $75,000, the court entered a new order that denied bail altogether and ordered petitioner detained.

Thereafter, the trial court held a preliminary hearing and held petitioner to answer on all counts except for the felony vandalism count. During the preliminary hearing, petitioner made an oral motion to set bail according to the bail schedule, which the court denied. Shortly after the preliminary hearing, the People filed an information alleging that petitioner had committed the offenses for which the court had held him to answer and that he had suffered a prior strike conviction.

---

[2] The record reflects that two of these prior convictions were for felony attempted robbery and felony burglary, and the majority of the remaining prior convictions were for misdemeanors, including DUIs, drug possession, vandalism, and nonviolent property theft.

Petitioner then filed an additional motion to set bail or to release him on his own recognizance. The People opposed the motion, and the trial court denied it after a hearing.

Petitioner filed a petition for writ of habeas corpus in the Court of Appeal challenging the denial of bail. The Court of Appeal issued an order to show cause. While his petition was pending, petitioner entered into a plea agreement under which he pled no contest to one count of misdemeanor identity theft in exchange for time served, resulting in his release from custody. The People filed a motion to dismiss the petition as moot. The Court of Appeal discharged the order to show cause and dismissed the petition as moot.

Petitioner sought review in this court. We granted his petition for review and transferred the matter back to the Court of Appeal with directions to vacate its dismissal order, conduct further proceedings, and issue an opinion on the question that we reserved in *Humphrey*, i.e., the potential reconciliation of the bail provisions in our state Constitution.

The Court of Appeal did so, and its published opinion also addressed the issue of whether a trial court may set bail above a defendant's ability to pay. The Court of Appeal's treatment of this latter issue conflicted with the analysis in *In re Brown* (2022) 76 Cal.App.5th 296 (*Brown*). (See *In re Kowalczyk* (2022) 85 Cal.App.5th 667, 690 (*Kowalczyk*).)[3] We granted review

---

[3] In its disposition, the Court of Appeal again dismissed the petition for writ of habeas corpus as moot. (*Kowalczyk*, *supra*, 85 Cal.App.5th at p. 692.) While we agree with the Court of Appeal that the petition is moot, we address the merits of the petition because it "raises important issues capable of repetition

limited to the following two issues: (1) Which constitutional provision governs the denial of bail in noncapital cases — section 12, subdivisions (b) and (c), or section 28(f)(3), of the California Constitution — or, in the alternative, can these provisions be reconciled? (2) May a trial court ever set pretrial bail above a defendant's ability to pay?

## II. OVERVIEW OF BAIL PROVISIONS IN OUR STATE CONSTITUTION

Since before statehood, the California Constitution has guaranteed a right to pretrial bail for most defendants.[4] That right remained essentially unchanged for nearly 125 years. Article I, section 7 of the California Constitution of 1849 provided: "All persons shall be bailable, by sufficient sureties, unless for capital offenses, when the proof is evident or the presumption great." Article I, section 6 of that same Constitution provided: "Excessive bail shall not be required . . . ." The two provisions were consolidated in article I, section 6 of the Constitution of 1879.

Historically, this court interpreted these provisions as providing criminal defendants with a right to pretrial release subject to very limited exceptions. In *In re Underwood* (1973) 9 Cal.3d 345, 350 (*Underwood*), we explained that the right to

---

but likely to evade review." (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1094, fn. 2; see *In re White* (2020) 9 Cal.5th 455, 458, fn. 1 (*White*) [explaining that, in light of the temporary nature of pretrial detention, we would exercise our discretion to consider a moot question pertaining to a defendant's bail as an important recurring issue likely to evade review].)

[4] The issues in this case pertain to pretrial bail. Different principles apply to bail pending appeal. (See, e.g., *In re Podesto* (1976) 15 Cal.3d 921, 925.)

pretrial release was guaranteed for all noncapital defendants. We further explained that, under the bail provisions as they existed at the time, the purpose of setting bail was solely to secure a defendant's appearance in court, not to impose punishment or protect public safety. (*Id*. at p. 348.) As such, we disapproved of court decisions that had read a " 'public safety' exception" into the general right to release on bail. (*Ibid*.)

This was the state of the law when voters enacted the first modern amendments to the bail provisions through the passage of Proposition 7 in 1974. Proposition 7 relocated the bail provisions to section 12 and added a sentence specifying that, as an alternative to setting bail, a trial court has discretion to release a person on his or her own recognizance. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1974) text of Prop. 7, § 22, p. 71 ["A person shall be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. [¶] A person may be released on his or her own recognizance in the court's discretion"].)

Over the next few decades, the constitutional landscape governing bail in California became considerably more dynamic. In June of 1982, the voters passed *two* "competing initiative measure[s] on the same ballot" that contained provisions pertaining to bail — Propositions 4 and 8 (Primary Elec. (June 8, 1982)). (*People v. Standish* (2006) 38 Cal.4th 858, 875 (*Standish*).) The voters enacted these provisions against the backdrop of our decision in *Underwood*, which held there was no public safety exception to a noncapital defendant's right to bail. (*Underwood, supra,* 9 Cal.3d at p. 348.) Proposition 4 and Proposition 8 both addressed public safety concerns, but in different ways.

Proposition 4 restructured section 12, adding two categories of defendants (aside from capital defendants) who could be denied bail altogether under certain circumstances: those charged with violent felonies (see § 12, subd. (b)) and those charged with felonies who had threatened violence (see § 12, subd. (c)). (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17 (1982 Ballot Pamphlet).) Proposition 4 also added language to section 12 providing that, "In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case." (1982 Ballot Pamp., at p. 17.) In the 1982 Ballot Pamphlet for Proposition 4, the analysis prepared by the Legislative Analyst informed voters that, under then-current law, "courts may deny bail *only* for those who are accused of crimes punishable by death" and that Proposition 4 would "broaden the circumstances under which the courts may deny bail" to those cases where defendants were charged with noncapital felonies under the circumstances described above. (1982 Ballot Pamp., at p. 16.)

Proposition 8, known as the "Victims' Bill of Rights" (1982 Ballot Pamp., *supra*, text of Prop. 8, § 1, p. 33), enacted reforms pertaining to numerous criminal justice matters. With respect to bail, rather than amend section 12, as Proposition 4 had done, Proposition 8 proposed to repeal section 12 in its entirety and to add what is now former section 28, subdivision (e) to the state Constitution.[5] (See 1982 Ballot Pamp., *supra*, text of Prop. 8,

_____

[5]    Former section 28, subdivision (e) provided: "Public Safety Bail. A person may be released on bail by sufficient

§§ 2, 3, p. 33.)  Further, in contrast to section 12's mandate that a defendant "*shall* be released on bail by sufficient sureties" (1982 Ballot Pamp., *supra*, text of Prop. 4, p. 17, italics added), former section 28, subdivision (e) provided that a "person *may* be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great." (See 1982 Ballot Pamp., text of Prop. 8, p. 33, italics added.) Like section 12, former section 28, subdivision (e) provided that excessive bail could not be required and listed factors for trial courts to consider in setting bail; however, former section 28, subdivision (e) included an additional factor for courts to consider in setting bail, namely "the protection of the public," and also instructed that this be the "primary consideration." (See 1982 Ballot Pamp., at p. 33.)

---

sureties, except for capital crimes when the facts are evident or the presumption great.  Excessive bail may not be required.  In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  Public safety shall be the primary consideration.  [¶]  A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.  However, no person charged with the commission of any serious felony shall be released on his or her own recognizance.  [¶]  Before any person arrested for a serious felony may be released on bail, a hearing may be held before the magistrate or judge, and the prosecuting attorney shall be given notice and reasonable opportunity to be heard on the matter.  [¶]  When a judge or magistrate grants or denies bail or release on a person's own recognizance, the reasons for that decision shall be stated in the record and included in the court's minutes." (1982 Ballot Pamp., *supra*, text of Prop. 8, § 3, p. 33.)

In 1994, the voters enacted Proposition 189, which once more amended section 12 by expanding the exception contained in subdivision (b) of that section to include persons who have committed "felony sexual assault offenses on another person" under specified circumstances. (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) text of Prop. 189, p. 18, italics omitted (1994 Ballot Pamphlet).)[6]

Then in *In re York* (1995) 9 Cal.4th 1133, in the course of considering whether courts could impose conditions on the release of persons on their own recognizance without violating

---

[6] As amended last by Proposition 189, section 12 now provides:

"A person shall be released on bail by sufficient sureties, except for:

"(a) Capital crimes when the facts are evident or the presumption great;

"(b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or

"(c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released.

"Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.

"A person may be released on his or her own recognizance in the court's discretion."

various statutory and constitutional provisions (see *id.* at p. 1137), we considered the legal validity of the constitutional provisions pertaining to bail and own recognizance release enacted through Propositions 4 and 8. After noting that the two propositions were enacted "in the same election," we explained that, "[b]ecause Proposition 4 received more votes than did Proposition 8, the bail and [own recognizance] release provisions contained in Proposition 4 are deemed to prevail over those set forth in Proposition 8." (*York*, at p. 1140, fn. 4, citing, inter alia, Cal. Const., art. II, § 10, subd. (b).)[7]

A little more than a decade later, in *Standish, supra,* 38 Cal.4th at pages 877–878, we "adhere[d] to the view [provided in *York*] that the amendments to article I, section 12 proposed by Proposition 4 took effect, and that the provisions of article I, [former] section 28, subdivision (e) proposed by Proposition 8 did not take effect." In explaining our reasoning, we "drew a distinction between the situation of two competing or alternative initiative measures, only one of which could prevail, and that of two measures presented to the voters as complementary or supplementary." (*Id.* at p. 876.) We noted that Propositions 4 and 8 "were not presented to the voters as complementary." (*Standish,* at p. 877.) For example, the opponents of Proposition 8 expressly contrasted it to Proposition 4, warning that Proposition 8 would enact "radical changes," including eliminating the right to bail. (*Standish,* at p. 877.) Similarly, we observed, based on ballot materials, the

---

[7] California Constitution article II, section 10, subdivision (b) provides, "If provisions of two or more measures approved at the same election conflict, the provisions of the measure receiving the highest number of affirmative votes shall prevail."

"[p]roponents of Proposition 8 would have eliminated the general right to bail, substituting a provision granting courts greater discretion to deny bail." (*Ibid*.)

In *Standish*, we further reasoned, "A section-by-section comparison of Propositions 4 and 8 demonstrates the direct conflict between the two measures." (*Standish*, *supra*, 38 Cal.4th at p. 877.) First, "Proposition 8 would have repealed California Constitution, article I, section 12 [citation], while Proposition 4 amended that provision." (*Ibid*.) In addition, "Proposition 4 stated that all accused persons 'shall,' be admitted to bail, subject to certain limitations [citation], while Proposition 8 would have rendered bail discretionary in all cases . . . ." (*Ibid*.) Because the two propositions were directly at odds, and Proposition 4 received a greater number of votes, we again concluded, as we had in *York*, that Proposition 8's addition of former section 28, subdivision (e) never took effect. (*Standish*, at p. 878.)

In 2008, the voters adopted another proposition containing constitutional provisions pertaining to bail, this time by passing Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law." (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 1, p. 128 (Voter Information Guide for Proposition 9).) Proposition 9 contains the second of the constitutional provisions governing bail that we consider here, section 28(f)(3).[8] As did former section 28, subdivision (e),

---

[8] Proposition 9 also amended section 28 by granting crime victims various rights, including, in section 28, subdivision (b)(3), having "the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant." (Voter Information Guide for Prop. 9, *supra*, text of Prop. 9, § 4.1, p. 129.)

section 28(f)(3) provides that "[a] person *may* be released on bail by sufficient sureties." (Italics added.) Section 28(f)(3) also mandates that, in "setting, reducing or denying bail," courts must take into consideration various factors and that "[p]ublic safety and the safety of the victim shall be the primary considerations." (*Ibid.*)[9] Unlike Proposition 8 in 1982, however, Proposition 9 did not expressly repeal section 12.

On several occasions after the passage of Proposition 9, we have reserved the question of "how the two constitutional provisions addressing the denial of bail [sections 12 and 28(f)(3)] can or should be reconciled." (*In re Harris* (2024) 16 Cal.5th 292,

---

[9] Section 28(f)(3) provides:

"Public Safety Bail. A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. Public safety and the safety of the victim shall be the primary considerations.

"A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.

"Before any person arrested for a serious felony may be released on bail, a hearing may be held before the magistrate or judge, and the prosecuting attorney and the victim shall be given notice and reasonable opportunity to be heard on the matter.

"When a judge or magistrate grants or denies bail or release on a person's own recognizance, the reasons for that decision shall be stated in the record and included in the court's minutes."

308, fn. 2 (*Harris*); see *Humphrey*, *supra*, 11 Cal.5th at p. 155, *White*, *supra*, 9 Cal.5th at pp. 470–471.) Pursuant to our transfer order, the Court of Appeal here considered that question, concluding that the two provisions "are easily reconciled." (*Kowalczyk*, *supra*, 85 Cal.App.5th at p. 685.) According to the Court of Appeal, "the most natural reading of article I, section 28(f)(3)'s phrase, '[a] person *may* be released on bail by sufficient sureties' " is that "a person may or may not be released on bail, consistent with the dictates in article I, section 12 that a person is generally entitled to bail release in noncapital cases except under the circumstances articulated in article I, section 12, subdivisions (b) and (c)." (*Id.* at pp. 683–684.)

Finally, in the wake of our decision in *Humphrey*, concluding that it violates state and federal equal protection and due process principles to detain defendants solely because they lack financial resources (*Humphrey*, *supra*, 11 Cal.5th at pp. 149–150), the Courts of Appeal have reached conflicting decisions as to whether it is permissible to set bail above a defendant's ability to pay. (Compare *Brown*, *supra*, 76 Cal.App.5th at p. 309 ["If the court finds money bail is reasonably necessary to ensure [the petitioner's] future court appearances and the safety of the public and the victims, then bail must be set for an amount [the petitioner] can afford"] with *Kowalczyk*, *supra*, 85 Cal.App.5th at pp. 691–692 [disagreeing with *Brown* and stating, "Though excessive bail cannot be imposed, courts are not required to set bail at an amount a defendant will necessarily be able to afford"].)

## III.  DISCUSSION

### A. The Proper Interpretation of Section 12, Subdivisions (b) and (c) and Section 28(f)(3)

Petitioner maintains that section 12, subdivisions (b) and (c) and section 28(f)(3) can be reconciled.  In petitioner's view, bail can only be denied outright in noncapital cases to those eligible for pretrial detention under section 12, subdivisions (b) and (c).  Section 28(f)(3), according to petitioner, refers to the possibility that a defendant may be released on bail and mandates that courts regard public and victim safety as the primary considerations when making bail determinations.

The People contend that section 12, subdivisions (b) and (c) and section 28(f)(3) conflict and that section 28(f)(3) prevails.[10]  In the People's view, the voters' enactment of section 28(f)(3) provides trial courts with "broader discretion" to deny bail beyond the "express exceptions" to the right to bail provided in section 12, subdivisions (b) and (c).

We agree with petitioner.

### 1. *Principles of constitutional interpretation*

In interpreting section 12, subdivisions (b) and (c) and section 28(f)(3), we apply principles of interpretation "similar to those governing statutory construction."  (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 (*Professional Engineers*).)  " '[O]ur paramount task is to ascertain the intent of those who enacted [the constitutional provisions].  [Citation.]  To determine that

---

[10]  The People are represented by the District Attorney of San Mateo County.  The Attorney General does not represent the People in this case and has not filed an amicus curiae brief in this court.

intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning." [Citation.] If the language is clear, there is no need for construction. [Citation.] If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent.' " (*Ibid*.) "Similarly, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning." . . .' 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' " (*Ibid*.)

Two additional well-established principles of interpretation are particularly relevant to our resolution of this case. First, " 'in the absence of irreconcilable conflict among their various parts, [constitutional provisions] must be harmonized and construed to give effect to all parts.' " (*County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 58; see *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 290 [" '[r]udimentary principles of construction dictate that when constitutional provisions can reasonably be construed so as to avoid conflict, such a construction should be adopted' "].)

Second, and relatedly, we must seek to "avoid the implied repeal of one provision by another." (*City and County of San Francisco v. County of San Mateo* (1995) 10 Cal.4th 554, 563.) " 'So strong is the presumption against implied repeals' that we

will conclude one constitutional provision impliedly repeals another only when the more recently enacted of two provisions constitutes a revision of the entire subject addressed by the provisions." (*Ibid*.)  An implied repeal will not be found unless " '(1) "the two acts are so inconsistent that there is no possibility of concurrent operation," or (2) "the later provision gives undebatable evidence of an intent to supersede the earlier" provision.' " (*Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 211 (*Wishnev*).)

### 2. *Section 12, subdivisions (b) and (c) and section 28(f)(3) can be harmonized*

According to the People, the following text of the two constitutional provisions pertaining to bail is in conflict: section 12 states that a person "*shall* be released on bail by sufficient sureties," while section 28(f)(3) provides that a person "*may* be released on bail by sufficient sureties." (Italics added.)

The People reason that "section 12's mandate that bail 'shall' be set for all but the most violent offenders [stands] in direct conflict with section 28's grant of discretion to trial courts to set or deny bail."  The People further claim that, through their use of the word "may" in section 28(f)(3), the voters intended to vest trial courts with discretion to deny bail outside of exceptions to the right to release on bail set forth in section 12's subdivisions.

The People's view is consistent with the fact that " 'the word "shall" . . . is ordinarily deemed mandatory and "may" permissive.' " (*Standish*, *supra*, 38 Cal.4th at p. 869.)  However, as the Court of Appeal recognized, " '[m]ay' is a term that also refers to an expression of possibility." (*Kowalczyk*, *supra*, 85 Cal.App.5th at p. 684, citing Black's Law Dict. (11th ed. 2019)

p. 1172, col. 2; see, e.g., *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724 [" 'may' here means possibility, and not just permission"].) Thus, the phrase "[a] person may be released on bail by sufficient sureties" in section 28(f)(3) may simply refer to the possibility that a defendant may or may not be released on bail, without authorizing a trial court to deny bail with respect to offenses other than those described in section 12.

Our case law recognizes that the word " '[m]ay' is a common grammatical term encompassing multiple meanings" such that its connotation can be ambiguous. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [stating that in light of its "definitional diversity, it is impossible to conclude with sufficient certainty what the Legislature intended by its use of 'may' if we consider the word in isolation"].) "We must therefore focus more broadly on the language, context, and history" (*ibid.*) to understand the way the voters used the word "may" in section 28(f)(3).

We first consider the historical context. As noted, *ante*, the right to release on bail, as currently codified in section 12, has been a constitutional right since our state's founding. (Cal. Const. of 1849, art. I, § 7; see *People v. Tinder* (1862) 19 Cal. 539, 542 (*Tinder*) ["The Constitution [of 1849] . . . secures . . . the right to bail in all cases, except when charged with a capital offense, and even then, unless the proof of guilt is evident or the presumption of it is great"].) Such a right was included in our state's earliest Constitution "to abrogate the common law rule that bail was a matter of judicial discretion by conferring an absolute right to bail except in a narrow class of cases." (*In re Law* (1973) 10 Cal.3d 21, 25 (*Law*); see *Underwood, supra,* 9 Cal.3d at pp. 349–350 ["Our constitutional language expressly providing that all persons shall be bailable except for a capital

offense was consciously *added* to the 'no excessive bail' language adopted from the Eighth Amendment [of the federal Constitution] in order to make clear that, unlike the federal rule, all except the one class of defendants were to be bailable"].)

And yet, unlike in 1982 when the voters were asked to repeal article I, section 12,[11] nothing in Proposition 9, including section 28(f)(3), expressly repeals "the right to pretrial release on bail" guaranteed by section 12. (*Harris*, *supra*, 16 Cal.5th at p. 301.) We are reluctant to conclude that the voters who passed Proposition 9, without enacting any text directly repealing the long-standing right to bail contained in section 12, intended to authorize courts to exercise broad "judicial discretion" in deciding whether to grant bail, given that such discretion has never been part of our state's law. (*Law*, *supra*, 10 Cal.3d at p. 25.)

The text and structure of section 12 further suggest that we should be cautious of finding an intent to create an exception to the right to release on bail outside of section 12's provisions. Section 12 first prescribes a broad right to release on bail and then identifies, in list format, specific exceptions from that right. (§ 12 ["A person shall be released on bail by sufficient sureties, except for: [subds. (a)–(c)]".) Under the interpretive canon of *expressio unius est exclusio alterius* — " 'the expression of one thing in a statute ordinarily implies the exclusion of other things' " (*Needham v. Superior Court* (2024) 16 Cal.5th 333, 366) — we should not lightly infer an intent to create additional exceptions to the right to release on bail outside of those

---

[11]     *Standish*, *supra*, 38 Cal.4th at page 874; see 1982 Ballot Pamphlet, *supra*, text of Proposition 8, section 2, page 33 ("Section 12 of Article I of the Constitution is repealed").

expressly listed in section 12.  As this court explained in *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635–636 (*Lopez*), " 'if exemptions are specified in a statute,[12] we may not imply additional exemptions unless there is a clear legislative intent to the contrary.' "  While "the *expressio unius* inference properly arises only when there is reason to believe a[n] . . . omission was intentional, such as when the [provision] contains a 'specific list,' " here "there is [such] a list" provided in subdivisions (a), (b) and (c) of section 12.  (*Lopez*, at p. 636.)

Nor does Proposition 9 establish a "clear . . . intent" (*Lopez*, *supra*, 5 Cal.5th at p. 636) to broaden section 12's list of exceptions to the right to release on bail.  To the contrary, the language of section 12 and section 28(f)(3) suggests the voters intended for the two provisions to operate together.  Section 12 defines the circumstances under which a defendant is eligible for a denial of bail.  Specifically, as petitioner observes, section 12 "provides a series of procedural requirements" that must be satisfied before bail may be denied.  (See § 12, subds. (b), (c) [listing specific categories of offenses and standards of proof].)  In contrast, section 28(f)(3) lacks any such provisions.

Thus, in *Humphrey*, rather than concluding that section 28(f)(3) operated as a *stand-alone* provision authorizing the denial of bail, we held that trial courts are to apply section 12 in *conjunction with* section 28(f)(3) in " 'setting, reducing or denying bail.' "  (*Humphrey*, *supra*, 11 Cal.5th at p. 152.)  Specifically, we explained that a court is to apply the standard of proof provided in section 12 when considering

---

**12**     The canon is applicable when interpreting constitutional as well as statutory provisions.  (See *Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 514.)

whether public or victim safety concerns referred to in section 28(f)(3) support pretrial detention. (See *Humphrey*, at p. 153 ["look[ing] to the standard of proof set forth in article I, section 12 of the California Constitution" for determining whether "our Constitution . . . bar[s] a court from causing an arrestee to be detained pretrial based on concerns regarding the safety of the public or the victim" under § 28(f)(3)].) The *Humphrey* court's *reliance* on section 12's standard of proof in explaining the proper application of section 28(f)(3) is consistent with the view that the voters did not *repeal* section 12 in enacting section 28(f)(3).

Moreover, if the voters' intent in enacting Proposition 9 was to create a new category of circumstances under which the right to release on bail in section 12 was to be inapplicable, the natural place to have evinced such intent would have been in section 12 itself. Indeed, when the voters wanted to limit the right to release on bail provided in section 12 in the past, they did just that — i.e., amended section 12. For example, in 1982, in enacting Proposition 4, the voters amended section 12 to add subdivisions (b) and (c), limiting the right to bail for those charged with violent felonies or those charged with felonies who had threatened violence. (1982 Ballot Pamp., *supra*, text of Prop. 4, p. 17.) Similarly, in 1994, in adopting Proposition 189, the voters amended section 12, subdivision (b) to limit the right to bail for those charged with felony sexual assault offenses under certain circumstances. (1994 Ballot Pamp., *supra*, text of Prop. 189, p. 18.) Thus, the fact that, in 2008, when the voters passed Proposition 9 and enacted section 28(f)(3), they did not *expressly* amend section 12, suggests that we should be wary of reading Proposition 9 as *impliedly* amending that provision.

Furthermore, as noted *ante*, we will not find an implied repeal unless there is either " ' "no possibility of concurrent operation" ' " of the two laws or " ' "undebatable evidence of an intent to supersede the earlier" provision.' " (*Wishnev*, *supra*, 8 Cal.5th at p. 211.) Neither circumstance is present here.

First, the Court of Appeal's harmonization of section 12 and section 28(f)(3) makes clear that concurrent operation *is* possible. (*Kowalczyk*, *supra*, 85 Cal.App.5th at p. 683.) As the Court of Appeal explained, sections 12 and 28(f)(3) can be reconciled by "interpret[ing] the first sentence of article I, section 28(f)(3) as a declarative statement . . . [of] existing law" (*Kowalczyk*, at p. 686), at least for noncapital cases. (See *id*. at p. 684 [§ 28(f)(3)'s phrasing "acknowledges that a person may or may not be released on bail, consistent with the dictates in article I, section 12 that a person is generally entitled to bail release in noncapital cases"].) "Under this construction, article I, section 12's general right to bail remains intact, while full effect is accorded to section 28(f)(3)'s mandate that the rights of crime victims be respected in bail and [own recognizance] release determinations." (*Id*. at p. 686; see *Nunez-Dosangos v. Superior Court* (2024) 107 Cal.App.5th 283, 291 [applying *Kowalczyk*].)[13]

In addition, far from " ' "undebatable evidence" ' " of an intent to supersede (*Wishnev*, *supra*, 8 Cal.5th at p. 211), there is nothing in Proposition 9's ballot materials that evinces the voters' intent to have the enactment of section 28(f)(3) repeal section 12's right to bail. The Attorney General's official title

---

[13] Notwithstanding their contrary interpretation, the People acknowledge that the Court of Appeal's reconciliation of the constitutional provisions is "a reasonable outcome."

and summary mentioned the word "bail" just twice, and never referred to the circumstances under which a court was authorized to *deny* bail.[14] As the Court of Appeal correctly observed, "the Legislative Analyst offered no view that the measure would completely eliminate the historic right to bail which has existed in the California Constitution since 1849. Nor did the arguments for and against Proposition 9 suggest that the measure would expand judicial discretion to deny bail release beyond the exceptions in article I, section 12, subdivisions (b) and (c)." (*Kowalczyk*, *supra*, 85 Cal.App.5th at p. 685, citing Voter Information Guide for Prop. 9, *supra*, argument in favor of Prop. 9 and rebuttal to argument in favor of Prop. 9, pp. 62–63.)

For all these reasons, we conclude that section 28(f)(3) does not abrogate, and instead may be harmonized with, the contours of the right to release on bail set forth in section 12.

### 3. *Contrary arguments are unpersuasive*

The People and their supporting amici curiae offer several contrary arguments, but we find none to be persuasive. First, while acknowledging that "Proposition 9 did not contain an express provision to repeal section 12," the People argue that Proposition 9 impliedly repealed section 12's right to bail based on our holding in *Standish* that section 12 and former

---

[14] The two references to bail in the Attorney General's summary of the proposition were as follows: "[r]equires notification to victim and opportunity for input during phases of criminal justice process, including bail, pleas, sentencing and parole," and "[e]stablishes victim safety as consideration in determining bail or release on parole." (Voter Information Guide for Prop. 9, *supra*, official title and summary of Prop. 9, p. 58.)

section 28, subdivision (e) were in "direct conflict" and could not be reconciled. (*Standish*, *supra*, 38 Cal.4th at p. 877; see *id*. at pp. 874–878.)

Our reasoning in *Standish* does not control here. Unlike in *Standish*, we are not asked to consider whether two different propositions enacted at the same election are complementary or competing. (*Standish*, *supra*, 38 Cal.4th at p. 876.) Rather, we must consider whether section 12 was impliedly repealed by Proposition 9, which was enacted independently by the voters in 2008 more than a decade after the voters last amended section 12 in 1994. And, most importantly, unlike in *Standish*, we are not interpreting a proposition that proposed to expressly repeal section 12. Given Proposition 8's proposed express repeal of section 12, the *Standish* court reasonably interpreted Proposition 8's use of "may" in the permissive sense of making "bail discretionary in all cases." (*Standish*, at p. 877.) However, *Standish* provides little insight into how we should understand section 28(f)(3)'s use of the phrase "*may* be released on bail" (italics added), in light of section 12's continuing guarantee that a defendant "*shall* be released on bail" (italics added).[15]

Nor are we persuaded by the People's argument that we should find an implied repeal of section 12 because "[t]he timing of Proposition 9" suggests that the proposition " 'constitute[d] a revision of the entire subject.' " (Quoting *Professional Engineers*, *supra*, 40 Cal.4th at p. 1038.) While Proposition 9 was enacted approximately two years after this court's decision in *Standish*, none of the Proposition 9 ballot materials mentioned *Standish* or suggested that the initiative was a

---

[15] Nothing in the ballot materials for Proposition 9 explains the reason for the use of the word "may" in section 28(f)(3).

response to that case.[16] The timing of the enactment of Proposition 9 is plainly an insufficient basis to conclude that the proposition impliedly repealed section 12.

The People additionally raise the following argument: "Because section 28(f)(3) begins with a complete prohibition of bail for the most serious crimes, the term, 'may,' expresses only a possible deviation from that most restrictive position. In essence, the operative clause states that bail is sometimes prohibited and never guaranteed," and that "[s]uch a reading places section 28(f)(3) in conflict with section 12." This argument, too, is unpersuasive.

To begin with, the first sentence of section 28(f)(3) does not expressly prohibit the granting of bail for *any* noncapital crimes. Instead, it affirmatively states when bail *may* be granted: "A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great." (*Ibid*.) Further, any prohibition on the granting of bail in capital cases contained in section 28(f)(3), arising by negative implication, occurs only "when the facts are evident or the

---

**16** The Court of Appeal noted "the ballot materials accompanying Proposition 9 made no mention of [this court's] decision [in *Standish, supra,* 38 Cal.4th 858] holding that Proposition 8's similar bail provisions were inoperative; nor did the materials otherwise indicate the voters were being asked to 're-enact' or effectuate the inoperative bail provisions." (*Kowalczyk, supra,* 85 Cal.App.5th at p. 680.) While the Court of Appeal concluded that these omissions were not sufficient to deem section 28(f)(3) inoperative (see *Kowalczyk*, at p. 680) — a conclusion that petitioner does not challenge in this court and we thus have no occasion to consider — they further reinforce the conclusion that there is nothing in the ballot materials accompanying Proposition 9 suggestive of an intent to reenact Proposition 8's repeal of section 12.

presumption great." Thus, we disagree that section 28(f)(3) establishes a "complete prohibition of bail for the most serious crimes."

Moreover, we have long interpreted section 12 as providing no barrier to legislation prohibiting the granting of bail in capital cases where the proof is evident or the presumption great. As this court explained in 1862, "The admission to bail in *capital* cases, where the proof is evident or the presumption is great, may be made a matter of discretion, and *may be forbidden* by legislation . . . ." (*Tinder*, *supra*, 19 Cal. at p. 542, italics added.) Even if we were to accept the People's argument that upon its enactment, current section 28(f)(3) prohibits the granting of bail in certain capital cases, where section 12 *does not* guarantee a right to bail, it does not follow that section 28(f)(3) permits the denial of bail in instances in which section 12 *does* guarantee the right to bail.[17]

The People also maintain that we should adopt their interpretation of section 28(f)(3) because it is consistent with Proposition 9's focus on ensuring victims' rights. However, our

---

[17]    As a separate textual argument, the People briefly reference a provision in Proposition 9 that states, "It is the intent of the People of the State of California in enacting this act that if any provision in this act conflicts with an existing provision of law which provides for greater rights of victims of crime, the *latter* provision shall apply." (Voter Information Guide for Prop. 9, *supra*, text of Prop. 9, § 7, p. 132, italics added.) The People argue this provision indicates that Proposition 9 is "intended to be the controlling provision" when it conflicts with another law (such as § 12). Contrary to the People's argument, this provision indicates that Proposition 9 is to be *superseded* by any conflicting law under the circumstances described.

harmonization of section 12 and section 28(f)(3) creates no conflict with the requirement that courts consider victim safety in making bail determinations. As we emphasized in *Humphrey*, "The voters amended the Constitution to grant the people of this state the right to have the safety of the victim and the victim's family considered in the bail determination process." (*Humphrey*, *supra*, 11 Cal.5th at p. 152; see *id.* at pp. 153–156 [repeatedly referring to the government's strong interest in protecting the safety of victims in making bail determinations].) Nothing in our holding contradicts these principles.

Amicus curiae California District Attorneys Association (CDAA) notes that section 28(f)(3) discusses the factors courts should consider in "setting, reducing, or *denying* bail." (Italics added.) The CDAA contends that the reference to "denying" bail in section 28(f)(3) would be surplusage unless it is interpreted to provide trial courts with "broad discretion" to deny bail to those who would otherwise be ineligible for such denial under section 12. However, we have previously interpreted section 12, subdivision (b) as permitting — but not requiring — the denial of bail to those persons whose offense(s) fall within that exception. (See *White*, *supra*, 9 Cal.5th at p. 469 ["[a] person who falls within the article I, section 12 [subdivision] (b) exception does not have a right to bail, yet may nonetheless be granted bail — or release on the person's own recognizance — in the trial court's discretion"].) Because section 28(f)(3) may reasonably be interpreted as instructing a court to take public and victim safety factors into consideration in determining whether to deny bail to a defendant eligible for such denial pursuant to section 12, our interpretation does not render section 28(f)(3) surplusage.

Finally, the People and their supporting amici curiae advance various policy arguments contending that there are many defendants who should not be released on bail for public safety reasons who might not qualify for a denial of bail under section 12.  In particular, the People express concern that "[i]f *Humphrey* prohibits the setting of unaffordable bail, and section 12 is held controlling over section 28(f)(3), we [will] see a sudden and uncontemplated *right to release* emerge for all detainees not charged with an offense expressly set forth in section 12's subsections."

Conversely, in response to the amicus curiae briefing in this case, petitioner identifies numerous policy reasons that counsel *against* using section 28(f)(3) as a stand-alone basis for denying bail based on public safety concerns.  For example, petitioner points to harms caused by pretrial detention on defendants and their families, as compared to the success pretrial detention alternatives have shown in improving criminal justice outcomes.[18]  This court has also previously addressed the significant potential harms associated with pretrial detention.  (See *Humphrey*, *supra*, 11 Cal.5th at p. 147 [discussing the "immense and profound" disadvantages of pretrial detention to defendants, including hampering the ability to prepare a defense, the risk of losing one's job, home, or custody of a child, the possible connection to reoffending, and costs to the taxpayers of incarcerating defendants].)

---

[18]    Among other organizations, the Alameda County District Attorney's Office filed an amicus curiae brief in support of petitioner in this matter.  However, the Alameda County District Attorney has since advised this court that it no longer takes the position espoused in its amicus curiae brief.

The People's policy arguments do not persuade us to adopt their interpretation of section 28(f)(3) or to find a repeal of section 12's right to release on bail where the voters have declined to do so. Instead, we conclude section 12 itself provides the governing framework for protecting the public. Section 12, subdivision (b) authorizes trial courts to order the detention of individuals charged with violent felonies and felony sexual assault offenses. And section 12, subdivision (c) allows courts to order the detention of individuals charged with other felony offenses who have threatened people with great bodily harm. These subdivisions already provide courts with significant latitude to order the detention of dangerous defendants. These protections are bolstered by the highly deferential standard of review that applies when a court's assessment of a defendant's dangerousness and its findings under subdivisions (b) and (c) of section 12 are challenged. (See, e.g., *White*, *supra*, 9 Cal.5th at p. 465 [a trial court's decision to deny bail under § 12, subd. (b) should be upheld when "any reasonable trier of fact could find, by clear and convincing evidence, a substantial likelihood that the person's release would lead to great bodily harm to others"].)[19]

We are unable to disregard this framework merely because the People would prefer a more expansive authority to detain individuals charged with offenses beyond those set forth in section 12, subdivisions (b) and (c). As this court has noted

---

[19]   In *White*, we upheld the detention of a defendant with no prior criminal record charged with aiding and abetting a friend's attempt to commit a felony sexual assault. (*White*, *supra*, 9 Cal.5th at pp. 467–469; see also *In re O'Connor* (2022) 87 Cal.App.5th 90, 105–106 [upholding detention order based on indirect participation in an act of felony child endangerment].)

specifically in this context, " 'If the constitutional guaranties are wrong, let the people change them — not judges or legislators.' " (*Underwood, supra*, 9 Cal.3d at p. 350.)

### 4. *Conclusion*

The voters have shown a willingness to reconsider the breadth of section 12's bail guarantee on several occasions. To the extent they wish to revisit section 12's framework for making pretrial release determinations, that is certainly their prerogative. However, there is no evidence to suggest the electorate intended to repeal the right to release on bail guaranteed in section 12 through the enactment of section 28(f)(3). Rather, the constitutional bail provisions may be read in harmony, as described above.

In light of this holding, we conclude the trial court in this case erred in denying bail to petitioner without determining whether it could make the findings required for ordering pretrial detention, as set forth in section 12, subdivisions (b) through (c). (See *White, supra*, 9 Cal.5th at p. 471 [specifying findings court must make to deny bail under § 12, subd. (b)].)

### B. Setting Bail in Relation to a Defendant's Financial Circumstances

With respect to the second question on which we granted review — whether a trial court may ever constitutionally set pretrial bail above a defendant's ability to pay — petitioner contends that setting bail in an amount beyond a defendant's ability to pay offends section 12's[20] guarantee of release on bail, as well as equal protection principles.

---

[20] Petitioner does not argue that section 28(f)(3) bars setting bail in an amount greater than a defendant's ability to pay.

Based on our constitutional framework, which prioritizes pretrial liberty by mandating that nearly all noncapital criminal defendants have a general right to release on bail, combined with the equal protection and due process principles announced in *Humphrey*, we conclude that bail determinations (including the amount of bail that is set) must be *reasonable* under the totality of the circumstances.  As a general rule, the right to reasonable bail means that the court may not set bail in an amount that is objectively unattainable for the defendant.  That is to say:  The right to release on bail generally cannot be conditioned on financial payments that are set at amounts known to be insurmountable or objectively unachievable based on the defendant's demonstrated financial circumstances. What constitutes reasonable bail in noncapital cases where pretrial detention is not authorized under section 12, subdivisions (b) and (c), is necessarily an individualized assessment which will depend on numerous factors.  When it comes to considering monetary bail, the defendant must do more than present conclusory assertions of indigency or an inability to pay.  The Constitution and our precedent reflect a balancing process, where "the state has a compelling interest in assuring the arrestee's appearance at trial and protecting the safety of the victim as well as the public." (*Humphrey*, *supra*, 11 Cal.5th at p. 142.)  But courts cannot use artificially high or objectively unattainable bail as an end run to effectuate pretrial detention where such detention is not authorized under section 12.[21]

---

[21]    In describing the rule that generally governs the setting of bail, we do not address marginal hypothetical scenarios that may raise different questions about what constitutes reasonable

Section 12 provides for the right to be "released on bail by sufficient sureties," and prohibits setting bail that is "[e]xcessive." (*Ibid.*; see also § 28(f)(3) [containing an identical prohibition on the requiring of "[e]xcessive bail"].) This framework read as a whole, together with the due process and equal protection principles we recognized in *Humphrey*, supports the general rule that bail may not be set in an amount that is objectively unattainable given the defendant's financial situation and the totality of other circumstances.

First, ordering unattainable bail in noncapital cases outside of the circumstances authorized by section 12, subdivisions (b) and (c), is generally contrary to section 12's guarantee of the right to be "released on bail by sufficient sureties." Such pretextual detentions run afoul of the plain language of section 12 read as a whole. As noted, section 12 first provides that a person "shall be released on bail by sufficient sureties" and then specifies, in subdivisions (a), (b), and (c), the exceptions to this general mandate of release, i.e., the specific circumstances in which a court may order a defendant detained. To interpret the phrase "by sufficient sureties" as a broad grant of authority to deny release to defendants outside of these specified circumstances would render meaningless the limited list of circumstances under

---

bail under the circumstances; for example, our decision today does not reach a case in which a wealthy defendant who is facing a significant term of imprisonment on a felony charge but is not subject to detention under section 12 is found to present a threat to public or victim safety or a credible and significant risk of flight. Such hypothetical scenarios are beyond the scope of the issues presented in this case. We believe the soundest course is to allow courts to address these questions, and for the law to develop, as the issues arise.

which detention is authorized.  (See *In re J.W.* (2002) 29 Cal.4th 200, 209 [in construing a statute, we assume that "every part of a statute serves a purpose and that nothing is superfluous" and that "the expression of one thing in a statute ordinarily implies the exclusion of other things"].)  As we held in *White*, detention may be ordered under subdivision (b) of section 12 only when the record contains "evidence of a qualifying offense sufficient to sustain a hypothetical verdict of guilt on appeal" and "clear and convincing evidence establishing a substantial likelihood that the defendant's release would result in great bodily harm to others."  (*White, supra*, 9 Cal.5th at p. 471.)  If a trial court could generally deny release by setting unattainable bail without making these findings (or findings supporting detention under § 12, subd. (c)), these limits would have no real force or effect.  A trial court could effectively order a defendant detained where there was not sufficient evidence of the charged crime or where there was little evidence of risk of great bodily harm.  Indeed, a court could deny release to a defendant who was charged with an offense — such as a misdemeanor or a nonviolent felony where the detainee had not made any threat of violence — that does not fall under the exceptions enumerated in section 12.  Such an interpretation is contrary to section 12's clear mandate that a person "shall be released on bail" except in one of the enumerated circumstances.[22]

---

[22]    As the *Kowalczyk* court observed, there is a dearth of California case law "expressly interpreting the phrase 'sufficient sureties.'"    (*Kowalczyk, supra*, 85 Cal.App.5th at p. 687.)  However, the historical context of that term does not support the detention of defendants through the use of an objectively unattainable amount of cash bail.  As one of the amicus curiae

Second, some meaning must also be given to the prohibition against excessive bail. In *Ex parte Duncan* (1879) 54 Cal. 75, 79, we considered whether bail was excessive because it was "disproportionate to the amount which the prisoner is alleged to have obtained as the fruits of his crimes." Consistent with the totality of the circumstances approach we adopt here, we reasoned with respect to excessiveness: "Undoubtedly the extent of the pecuniary ability of a prisoner to furnish bail is a circumstance among other circumstances to be considered in fixing the amount in which it is to be required, but it is not in itself controlling. [Otherwise], . . . the fact that the prisoner had no means of his own, and no friends who were able or willing to become sureties for him, even in the smallest sum, would constitute a case of excessive bail, and would entitle him to go at large upon his own recognizance." (*Id.* at p. 78.) However, bail that is objectively unattainable or artificially high under the relevant circumstances, including the defendant's financial situation and the purposes of bail, would also be excessive. Although a defendant cannot rely on conclusory assertions of excessiveness to prevail in every case,

---

briefs explains, at the time of section 12's adoption, the term "surety" did not even mean "money bail" but instead meant a person to whom the defendant would be released, and who would pledge to forfeit property and otherwise answer for a defendant who did not appear in court. (See Funk & Mayson, *Bail at the Founding* (2024) 137 Harv. L.Rev. 1816, 1823 ["A surety was an individual — typically a family member, friend, or employer — who also pledged to forfeit a specified sum if the defendant failed to appear. The pledges by the defendant and his sureties, . . . were the 'security' offered for the defendant's appearance. They were promises only; they were not themselves secured by any transfer or collateral or legal right (like a lien)" (fn. omitted)].)

courts likewise cannot evade the requirements of section 12, subdivisions (b) and (c) through bail amounts that bear no relation to a defendant's actual financial circumstances and lack due regard for the purposes of bail, but instead are designed to functionally detain defendants who fall outside the specified limits of section 12. Bail is excessive when it is higher than reasonably necessary to promote those purposes of bail.

Third, we have already held that the "common practice of conditioning freedom solely on whether an arrestee can afford bail is unconstitutional" based on equal protection and due process principles. (*Humphrey*, *supra*, 11 Cal.5th at p. 143.) As detailed below, *Humphrey* supports our conclusion that, to ensure a criminal defendant's equal protection and due process rights, courts generally must set bail in an amount that is reasonable and objectively attainable based on an individualized assessment of the totality of the circumstances in a given case, including the defendant's financial situation.

In *Humphrey*, we considered whether it "violates the state and federal Constitutions to hold an arrestee in custody solely because the arrestee cannot afford bail." (*Humphrey*, *supra*, 11 Cal.5th at p. 149.) In answering that question in the affirmative, we first explained that "[n]either this court nor the United States Supreme Court has yet held that a judge must consider what an arrestee can pay when fixing the amount of money bail." (*Ibid*.) However, we explained that "cases resolving analogous questions" revealed "a theme." (*Ibid*.)

For instance, we found guidance in the high court's decision in *Bearden v. Georgia* (1983) 461 U.S. 660, 665 (*Bearden*), which addressed whether it was constitutionally permissible to revoke a defendant's probation due to the

defendant's inability to pay certain fines and restitution that were part of his sentence. The *Bearden* court observed the difficulty in applying the traditional equal protection rubric in the context of indigency, explaining, "When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting 'the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished.'" (*Id.* at p. 666, fn. 8.) The *Bearden* court found the "more appropriate question" was "whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." (*Ibid.*) The court concluded this question was "substantially similar" to the equal protection inquiry (*id.* at p. 666) and that, in the context of the case, "[d]ue process and equal protection principles converge" (*id.* at p. 665). The court went on to conclude that the convergence of these principles prohibited revoking a defendant's probation for failure to pay unless the defendant had "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," or the defendant could not pay "despite sufficient bona fide efforts" and alternative measures are not "adequate to meet the State's interests in punishment and deterrence." (*Id.* at p. 672.)

In *Humphrey*, we explained that "[p]rinciples of equal protection and substantive due process likewise converge in the money bail context." (*Humphrey, supra,* 11 Cal.5th at p. 150.) And we agreed with the petitioner's objection that "the *method* by which his bail was determined" was unconstitutional because "the trial court failed to consider his ability to pay or

the efficacy of less restrictive conditions of release."  (*Id.* at p. 151, fn. 4.)  Accordingly, we held that where a court concludes that a financial condition is necessary to satisfy the state's interests in assuring the defendant's appearance at trial and protecting public and victim safety, "the court must consider the arrestee's ability to pay the stated amount of bail — and may not effectively detain the arrestee 'solely because' the arrestee 'lacked the resources' to post bail." (*Id.* at p. 143, citing & quoting *Bearden, supra*, 461 U.S. at pp. 667, 668.)

Finally, "[i]n light of our conclusion that courts must consider an arrestee's ability to pay alongside the efficacy of less restrictive alternatives when setting bail," we "sketch[ed] the general framework governing bail determinations" (*Humphrey, supra*, 11 Cal.5th at p. 152) in part by stating:  "In those cases where the arrestee poses little or no risk of flight or harm to others, the court may offer [own recognizance] release with appropriate conditions.  [Citation.]  Where the record reflects the risk of flight or a risk to public or victim safety, the court should consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial.  If the court concludes that money bail is reasonably necessary, then the court must consider the individual arrestee's ability to pay, along with the seriousness of the charged offense and the arrestee's criminal record, and — unless there is a valid basis for detention — set bail at a level the arrestee can reasonably afford.  And if a court concludes that public or victim safety, or the arrestee's appearance at trial, cannot be reasonably assured if the arrestee is released, it may detain the arrestee only if it first finds, by clear and convincing evidence, that no nonfinancial condition of release can reasonably protect those interests." (*Id.*

at p. 154.)[23]  We further held that, to facilitate review, ensure due process, and promote public confidence in decisionmaking, courts should state their findings with respect to bail determinations in the record.  (*Id.* at pp. 155–156.)

The issue presented in *Humphrey* was largely a challenge to "the *method* by which [the petitioner's] bail was determined," specifically a failure by the trial court to "consider" the petitioner's ability to pay, which resulted in the petitioner being "detained without adequate justification."  (*Humphrey, supra,* 11 Cal.5th at p. 151, fn. 4.)  Thus, in *Humphrey* we were not tasked with determining whether there was a further limit on the amount of bail a trial court could order, as we are here.

Today, we hold that a reasonableness analysis — considering the totality of the circumstances — is the appropriate limiting principle which naturally flows from the constitutional framework outlined above and our prior precedent.  (See *Underwood, supra,* 9 Cal.3d at p. 351 [requiring the posting of "reasonable bail"].)  As a threshold matter, a court must determine whether monetary bail is reasonably necessary, as in many instances, nonfinancial

---

[23]  Our statement in *Humphrey* that a court "may *detain* the arrestee only if it first finds, by clear and convincing evidence, that no nonfinancial condition of release can reasonably protect [state] interests" (*Humphrey, supra,* 11 Cal.5th at p. 154, italics added) preceded our holding in this case that a court generally may not order pretrial detention except as set forth in the exceptions to section 12.  (See *Humphrey,* at p. 155 ["Even when a bail determination complies with the above prerequisites, the court must still consider whether the deprivation of liberty caused by an order of pretrial detention is consistent with state statutory and constitutional law specifically addressing bail — a question not resolved here"].)

alternatives, such as ankle monitoring bracelets and court-ordered check-ins, suffice to ensure public safety and the defendant's appearance at trial. Assuming monetary bail is required based on clear and convincing evidence, in order to ensure that criminal defendants are not detained solely as a result of their inability to post bail, courts must set bail at an amount that is necessary to effectuate the purposes of bail, i.e., "public or victim safety, or the arrestee's appearance in court" (*Humphrey*, *supra*, 11 Cal.5th at p. 154), and reasonable based on a case-specific assessment of the totality of the circumstances. These circumstances include, "the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings." (*Id.* at p. 152.) Per *Humphrey*, the totality of the circumstances also includes the defendant's financial situation and available income, assets, and other resources. (See *id.* at p. 156.)[24]

This does not mean that, once a court determines that setting monetary bail is necessary to vindicate state interests, it must set bail in an amount that is easily affordable or convenient to the defendant, or that a court should accept a defendant's conclusory allegations regarding indigency, excessiveness, or an inability to pay. That is, if a defendant alleges the inability to pay a certain bail amount, the burden is

---

[24] This list of circumstances is not intended to be exhaustive. For instance, a court might consider whether available nonfinancial alternatives could be used *in combination* with a lower bail amount to meet state interests in a given case.

on the defendant to support that allegation with reliable evidence.[25]

In determining what constitutes a reasonable amount of bail under the circumstances, however, a court must effectuate a criminal defendant's general right to release on bail, subject only to the exceptions set forth in section 12. (See *Underwood*, *supra*, 9 Cal.3d at p. 350.) As a general matter, a bail amount that is not reasonably attainable for the defendant, despite "bona fide efforts to acquire the resources" to pay it (*Bearden*, *supra*, 461 U.S. at p. 672) does not effectuate this right and threatens to detain the defendant based "solely on whether [the defendant] can afford bail" (*Humphrey*, *supra*, 11 Cal.5th at p. 143). The Legislature may, within constitutional parameters, provide further guidance to trial courts making individualized, case-by-case reasonableness determinations.

Our holdings with respect to fixing bail may be summarized as follows: First, we start with the premise, as we did in *Humphrey*, that pretrial " 'liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.' " (*Humphrey*, *supra*, 11 Cal.5th at p. 155.) As we have held, a court may order the pretrial detention of a noncapital defendant only in the circumstances specified in subdivisions (b) and (c) of section 12. Second, a court may not

---

[25] Placing the burden on the defendant to demonstrate inability to pay is consistent with the law in other contexts. (See, e.g., Gov. Code, §§ 68632, 68633 [requiring a litigant seeking court fee waivers to submit an application supported by documentation of financial status], 27707 [providing that courts may require defendants requesting to be represented by the public defender to submit financial statements under penalty of perjury].)

condition release on the posting of bail unless the court has assessed the defendant's financial situation and determined by "clear and convincing evidence" that no nonfinancial conditions of release will "reasonably vindicate [the state's] interests" in ensuring public safety and the defendant's appearance; and stated its findings to that effect in the record. (*Id*. at p. 156.) If the court finds it necessary to condition release on monetary bail, the court must set bail in an amount that is reasonable, considering the purposes of bail and based on an individualized assessment of the totality of the circumstances in a case, including the defendant's financial situation. While the amount of bail need not be easily affordable or convenient to the defendant, the court must set bail in an amount that is consistent with, and designed to effectuate, a defendant's general right to pretrial release, subject only to the exceptions set forth in section 12.

Our Constitution reflects a balance between a criminal defendant's general right to pretrial release and the governmental interest in protecting public safety and ensuring the integrity of the criminal justice process while the defendant awaits trial. To the extent the voters desire to adjust that balance, it remains in their power to do so.

## IV. DISPOSITION

The Court of Appeal dismissed the petition for writ of habeas corpus as moot. We affirm the judgment of the Court of Appeal but disapprove of its reasoning to the extent it is inconsistent with this opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**WILEY, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re KOWALCZYK

S277910


Concurring Opinion by Justice Groban


Today's opinion clarifies that the California Constitution prohibits a court from ordering a person detained pending trial outside of the circumstances specified in article I, section 12 (article I, section 12). (Maj. opn., *ante*, at pp. 2–3, 30–31.) As the majority explains, article I, section 28(f)(3) (article I, section 28(f)(3)) contemplates that courts may, when necessary, set reasonably attainable bail; section 28(f)(3) does not authorize courts to order outright detention or to set bail at an unattainable level *for the purpose of effecting pretrial detention.* (Maj. opn., *ante*, at pp. 30–31, 35–36.) I fully concur in the majority.

Though article I, section 28(f)(3) generally does not allow for detention, article I, section 12 does. (Maj. opn., *ante*, at p. 32 & fn. 21.) I write separately to emphasize that, though the majority rightly curtails the use of section 28(f)(3) as a detention tool, section 12 provides sufficient latitude for courts to order the pretrial detention of those who would pose a clear danger to victims or the public if they were released. I also write to highlight that, as to those who are not subject to detention under section 12, courts may impose pretrial release conditions designed to protect public and victim safety and guard against flight risk.

I.

Respondent, represented by the San Mateo County District Attorney's Office, and the San Francisco District Attorney and the California District Attorneys Association, as amici curiae, worry that if trial courts may not order pretrial detention outside of the circumstances specified in article I, section 12 and also may not use unattainable bail to effect detention, they will have insufficient authority to ensure public and victim safety and to guard against flight risk. Based on this concern, the District Attorneys urge us to interpret article I, section 28(f)(3) as authorizing the practice of intentionally setting unattainable bail to effect pretrial detention when detention is not authorized under section 12.

But as today's opinion makes clear, this practice, however common and longstanding it may be,[1] is generally inconsistent with the constitutional right to pretrial release and with principles of equal protection and due process. (Maj. opn., *ante*, at pp. 31–42 & fn. 21.) What the district attorneys' proposed interpretation fails to account for is the fact that a court that intentionally sets objectively unattainable bail inevitably does so *for the purpose of detention*. (See Karnow, *Setting Bail for*

---

[1] Committee on Revision of the Penal Code, Annual Report and Recommendations (Dec. 2022) pp. 64–67 <https://clrc.ca.gov/CRPC/Pub/Reports/CRPC_AR2022.pdf> (as of April 30, 2026) (CRPC 2022 Report); Human Rights Watch, "Not in it for Justice": How California's Pretrial Detention and Bail System Unfairly Punishes Poor People (2017) pp. 5–6 (Not in It for Justice) <https://www.hrw.org/sites/default/files/report_pdf/usbail0417_web_0.pdf> (as of April 30, 2026). All internet citations in this opinion are archived by year, docket number, and case name at <https://courts.ca.gov/opinions/cited-supreme-court-opinions>.

*Public Safety* (2008) 13 Berkeley J. Crim. L. 1, 19–20 [characterizing use of "artificially high" bail as a "*sub rosa*" means of preventative detention].)  For courts and defendants alike, a bail amount intentionally set high enough to ensure the defendant cannot satisfy it is the "functional equivalent of a pretrial detention order."  (*In re Humphrey* (2021) 11 Cal.5th 135, 151 (*Humphrey*); see maj. opn., *ante*, at pp. 32, 35–36.)  The intentional setting of bail at an objectively unattainable level is thus inconsistent with the right to release on bail that is generally guaranteed by article I, section 12.  (Maj. opn., *ante*, at pp. 32, 35–36.)  As the majority opinion concludes, article I, section 28(f)(3) does not expand the categories of cases in which pretrial detention is authorized.  The district attorneys' preference for "a more expansive authority to detain individuals charged with offenses beyond those set forth in section 12, subdivisions (b) and (c)" does not provide a basis for disregarding the framework our Constitution sets out.  (Maj. opn., *ante*, at p. 30.)

## II.

It may be tempting to entertain the fiction that an order intentionally setting objectively unattainable bail is not a detention order if doing so were necessary to protect society.  But Article I, section 12 provides courts with sufficient latitude to order the detention of those whose release would present a clear danger to public or victim safety.  And when detention is not authorized by section 12, conditions of pretrial release may be used to minimize any risks the defendant may pose and to guard against flight risk.  There is no need to contort section 28(f)(3) into an alternative authority for detention.

Article I, section 12, subdivisions (b) and (c) carve out for outright detention categories of defendants that courts and prosecutors are rightly most concerned about: those charged with violent felonies or felony sexual assaults who present a substantial risk of causing "great bodily harm to others" if released (art. I, § 12, subd. (b)), as well as others — charged with any felony — who have threatened great bodily harm, where there is a "substantial likelihood that the person would carry out the threat if released" (*id.*, subd. (c)).  This is a powerful tool.  If the prosecution proves that a noncapital defendant meets the requirements of section 12, subdivision (b) or (c), the defendant can be detained *without being afforded any opportunity for release on bail*.

Moreover, appellate courts give trial courts considerable discretion in making these determinations, applying a "deferential standard of review."  (*In re White* (2020) 9 Cal.5th 455, 468 (*White*); see maj. opn., *ante*, at p. 30.)  Under this standard, a detention order is valid unless no court could reasonably have found by "clear and convincing evidence" either a "substantial likelihood" that "the person's release would result in great bodily harm to others" or "that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released," as long as the prosecution has put forward sufficient evidence for an appellate court to uphold a hypothetical guilty verdict on the charged offense.  (Art. I, § 12, subds. (b) & (c); see *White*, at pp. 463, 467.)

The district attorneys identify a handful of situations in which, they speculate, dangerous defendants who are ineligible for detention under article I, section 12 could remain at large and free to re-offend pending trial. They rightly worry about

domestic abusers, defendants charged with extreme child neglect, and felons found in possession of firearms. The San Francisco District Attorney fears that drug dealers released pending trial will "continue to peddle deadly fentanyl" on the city's sidewalks, picking up additional charges. Others may be concerned about the release of those accused of nonviolent felonies that impact large groups of victims, such as financial crimes, cybercrimes, or environmental crimes.

The potential dangers presented by situations like these can be significantly mitigated using conditions of release. Respondent cites the example of a "domestic abuser who torments a victim through unrelenting attempts at contact," but who stops short of threatening the victim, so is not detainable under article I, section 12, subdivision (c). Courts may use stay-away orders and electronic monitoring to address the dangers posed by such conduct. (Pen. Code, § 646.93, subds. (c)(1) & (2).) Stay-away orders and, where appropriate, removing the child from the home may protect the child from a person accused of "extreme child neglect" that does not involve violence. A prior violent offender found in possession of firearms can be required to surrender the firearms and to submit to random searches. (Pen. Code, § 646.93, subd. (c)(3).) Before a fentanyl dealer is released, the drugs are invariably seized, and search conditions, monitoring, curfews, mandatory check-ins, drug programming, drug testing, and stayaway orders may be imposed. And the dangers posed by releasing defendants charged with financial crimes, cybercrimes, and environmental crimes — charges more routinely brought in federal courts — may be mitigated by conditions of release that bar access to the means of committing them.

5

Further, in many of the examples provided by the district attorneys, outright detention may well be authorized under article I, section 12. When defendants are accused of felonies involving domestic abuse, child neglect, or drug trafficking, detention may be authorized under section 12 if the charges involve violence or threatened violence. In some cases, detention may be authorized even when the defendant was not the direct perpetrator. (See *White*, *supra*, 9 Cal.5th 455; *In re O'Connor* (2022) 87 Cal.App.5th 90.)

It is also important to recall that any new crimes committed on pretrial release carry their own consequences. The defendant may be arrested for the new offense and new conditions may be set for release, including, where necessary, monetary bail. (Pen. Code, §§ 1310, subd. (c), 1311, 1314.) Additional charges may be brought, and a new felony committed while the defendant is on release pending trial may trigger a sentence enhancement. (Pen. Code, § 12022.1, subd. (b).) And of course, if the new charge involves violence, sexual assault, or a threat of violence, the defendant may be subject to detention under article I, section 12 upon a sufficient evidentiary showing.

The district attorneys also express concern that individuals not detainable under article I, section 12 could fail to appear for their court dates or flee the state. But again, courts have tools short of detention available to address these risks. When the concern is that defendants will not appear, courts can provide reminders and transportation vouchers, and they can connect defendants to social services that address barriers to their ability to return to court, such as mental health providers,

substance abuse programs, housing, and childcare.[2]  And when a defendant fails to appear, the court may issue a bench warrant.  (Pen. Code, § 978.5, subds. (a)(2) & (3).)

In the unusual case where a court is concerned that a defendant will flee California or the United States to avoid prosecution, a court may order home detention, GPS monitoring, or the surrender of travel documents.  In such a case, requiring the defendant to post monetary bail, which is subject to forfeiture if the defendant fails to appear, may be justified.  (Pen. Code, § 1305, subd. (a)(1).)  A defendant who flees California to avoid prosecution may be forced to return to the state.  (See Pen. Code, § 1318, subd. (a)(4) [requiring defendant's agreement to "waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California" as a condition of release].)  And the willful failure to appear in court after being released pending trial can be charged as a separate crime.  (Pen. Code, §§ 1320, 1320.5.)

Out of the thousands of detention and bail determinations being made every week in our trial courts, the district attorneys' hypotheticals concern a small and atypical subset: cases in which the defendant is not accused of any act of violence or sexual assault, or even accused of threatening violence, but still poses such a serious and imminent threat to public safety that there are no pretrial release conditions that could adequately mitigate this threat.  As noted, trial courts have at their disposal

---

[2] See Judicial Council of Cal., Pretrial Pilot Program: Final Report to the Legislature (July 25, 2023) pp. 12–13 <https://courts.ca.gov/sites/default/files/courts/default/2024-12/pretrial-pilot-program_final-report.pdf> (as of April 30, 2026).

a range of effective tools for preventing criminal defendants who are released while awaiting trial from harming the public or their victims or from fleeing to evade prosecution. Today's decision may lead to the expansion of these tools' use and to the allocation of resources away from detention and towards programs that facilitate pretrial release, while working to ensure that defendants who are released pending trial appear in court so that pretrial release does not result in increased risk to victims or the public.[3] We need not adopt a strained reading of article I, section 28(f)(3) when article I, section 12 provides the necessary framework for outright detention and where courts can impose conditions of pretrial release to protect the public and victims.

This is not to suggest that it is possible to eliminate all risks associated with pretrial release. But a system in which a person's right to liberty turns on financial resources compromises public safety and raises equal protection and due process concerns. (*Humphrey*, *supra*, 11 Cal.5th at pp. 150–151; Workgroup Recommendations, *supra*, at p. 5.) In most cases, it is possible for a court to make a rough determination of what is an *attainable* amount of bail, accounting for the arrestee's individual financial circumstances; if that amount turns out to be too high, it may be adjusted downward under existing procedures. (See Pen. Code, § 1289 [providing for motion for reduction of bail].) However, if the goal were to prevent the release of a person whom the court has determined to be a

---

[3] See Pretrial Detention Reform Workgroup, Pretrial Detention Reform: Recommendations to the Chief Justice (Oct. 2017) (Workgroup Recommendations),<https://courts.ca.gov/sites/def ault/files/courts/default/2024-08/pdrreport-20171023.pdf> (as of April 30, 2026).

danger or a flight risk by setting bail in an *unattainable* amount, it is unclear how that amount could be accurately determined. Through the assistance of friends or family or bail bonds, or due to a miscalculation by the court, an amount thought to be unattainable may become attainable — and the defendant will be free on bail despite the court's intention to detain the defendant. (Workgroup Recommendations, at pp. 34–35, 39.) The practice of setting bail in an amount the defendant cannot afford without first determining whether the defendant is subject to detention under article I, section 12 therefore not only risks unconstitutionally detaining a person based on inability to afford bail but also risks inadvertently allowing the release of a person who presents a danger to public or victim safety. No such concerns are present when an eligible defendant is detained by denying release on bail under section 12.

## III.

While I have so far focused on the risks of pretrial release, it seems important also to acknowledge the well-documented ways in which pretrial detention can cause harm. Many people who are detained are never convicted of any crime; a substantial proportion of detainees is never even charged with one. (Workgroup Recommendations, *supra*, at p. 13; Not in It for Justice, *supra*, at pp. 3, 42–50.) Many others accept unfavorable plea offers, with potentially devastating repercussions for their employment, education, housing, access to public benefits, immigration status, and family stability. (Workgroup Recommendations, at p. 14; Not in It for Justice, at pp. 4, 51–54.) And some, forced to choose between remaining detained or pleading guilty to an offense they did not commit, choose to

plead guilty to secure their release. (Not in It for Justice, at pp. 4, 54–55.)

Individuals who are released from custody pending trial have significantly lower rates of conviction. (Petersen, *Do Detainees Plead Guilty Faster? A Survival Analysis of Pretrial Detention and the Timing of Guilty Pleas* (2020) vol. 31, no. 7, Crim. Justice Policy Review, 1017; Not in It for Justice, *supra*, at p. 4.) This is unsurprising, since being out of custody reduces time pressure and enables defendants to participate more effectively in their defense. (Not in It for Justice, at pp. 65–67.) Individuals who are out of custody are also in a better position to negotiate plea deals; they have an opportunity to demonstrate to the court and the prosecution that they are productive members of their communities and can comply with court orders and therefore deserve more lenient treatment. (*Id.*, at pp. 4, 67.)

A person who is detained, by contrast, is unable to go to work, attend school, participate in programming, or perform family duties. (Petersen, at p. 1018.) Detention can result in loss of work, housing, educational opportunities, access to medical care, public benefits, and child custody. (Workgroup Recommendations, *supra*, at p. 13; CRPC 2022 Report, *supra*, at pp. 69–70.) When individuals suffer such losses, it inevitably impacts their family members and communities. (Wiseman, *Pretrial Detention and the Right To Be Monitored* (2014) 123 Yale L.J. 1344, 1357.)

The risk that a defendant who is released pending trial may flee or reoffend is the price of any framework that presumes innocence and that treats liberty as the norm. (See *Humphrey*, *supra*, 11 Cal.5th at p. 154.) The district attorneys' fear that our constitutional framework may not provide courts with adequate

tools to protect public and victim safety and ensure against flight risk is not a basis for disregarding that framework. (Maj. opn., *ante*, at pp. 29–30.) As the majority opinion explains, the people of California have chosen to address these risks by authorizing courts to order the pretrial detention, upon a sufficient evidentiary showing, of noncapital defendants charged with violent crimes or sexual assaults, or who have made a credible threat of violence. (Maj. opn., *ante*, at pp. 29–30; art. I, § 12, subds. (b) & (c).) Outside of these circumstances, our state has instead chosen to address these risks by allowing courts to impose appropriate conditions of release, which may include, when necessary, reasonably attainable bail. (Maj. opn., *ante*, at pp. 39–40 & 32, fn. 21.) The imposition of bail in an amount that is not reasonably attainable upsets this balance by depriving those accused of crimes of their freedom based on their financial circumstances, without any trial or conviction. Today's opinion marks the end of that practice in our state.

**GROBAN, J.**

**We Concur:**

**LIU, J.**
**EVANS, J.**

In re KOWALCZYK

S277910


Concurring Opinion by Justice Wiley


Today's majority opinion, which I join, invites legislative and executive action. When it comes to large state issues, the legislative and executive branches have tremendous advantages over the judiciary.

The other branches can freely investigate, consult, compromise, and face the voters on policy platforms.

Legislative and executive investigations can range widely. What would an ideal bail system look like? In other jurisdictions, are there models California should emulate? What is the federal approach, and how might California learn from it?

The investigations can be detailed. What is a third party custodian? In the experience of federal judicial officers, how effective are affidavits of surety? Is the federal pretrial services program more extensive than its state counterpart? If so, would expansions of state programs be cost-effective? In what particular ways?

It is possible to create a new bail system via episodic constitutional rulings from judges. But judges are bound by the record the parties compile. Our view is not synoptic. Judges have no direct pipeline to voters. Judges cannot balance state priorities, take the initiative on pressing questions of the day, or enact budgets.

Today's decision invites a legislative and executive response.  I hope the invitation is accepted.

**WILEY, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Kowalczyk

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 85 Cal.App.5th 667
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S277910
**Date Filed:** April 30, 2026

_____

**Court:**  Superior
**County:**  San Mateo
**Judge:**  Susan L. Greenberg

_____

**Counsel:**

Law Offices of Marsanne Weese, Marsanne Weese and Rose Mishaan for Petitioner Gerald John Kowalczyk.

Carson White, Salil Dudani, Katherine Hubbard; Avram Frey, Mica Doctoroff, Emi Young; Summer Lacey; Claudia Y. Bautista, Public Defender (Ventura), and Michael C. McMahon, Deputy Public Defender, for the Civil Rights Corps, the American Civil Liberties Southern California, the California Public Defenders Association, Crime Survivors for Safety and Justice and the Ventura County Public Defender as Amici Curiae on behalf of Petitioner Gerald John Kowalczyk.

Complex Appellate Litigation Group, Kelly A. Woodruff; Crowell & Moring and J. Daniel Sharp for the Bar Association of San Francisco, the Los Angeles County Bar Association and the Santa Clara County Bar Association as Amici Curiae on behalf of Petitioner Gerald John Kowalczyk.

Lisa Maguire; Charles M. Denton; Sujung Kim; and Cynthia Janis for the California Public Defenders Association, the Alameda County Public Defender, the San Francisco County Public Defender and the Los Angeles County Alternate Public Defender as Amici Curiae on behalf of Petitioner Gerald John Kowalczyk.

Criminal Justice Program, UCLA School of Law and Alicia Virani for Alicia Virani as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

UC Berkeley Criminal Law & Justice Center and Chesa Boudin for Silicon Valley De-Bug as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

Mary K. McComb, State Public Defender, Teresa DeAmicis, Jason Gundel, Jennifer Hansen and Ray Ibarra, Deputy State Public Defenders, for the Office of the State Public Defender as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

Pamela Y. Price, District Attorney (Alameda), and Cynthia Chandler, Assistant District Attorney, for the Alameda County District Attorney's Office as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

Keker, Van Nest & Peters, Sophie Hood, Maria F. Buxton, Paul H. Von Autenried and Eric K. Phung for Kellen R. Funk and Sandra G. Mayson as Amici Curiae on behalf of Petitioner Gerald John Kowalczyk.

Keker, Van Nest & Peters, Cody S. Harris, Ian Kanig, Courtney J. Liss; Santa Clara University School of Law and W. David Ball for Crime Survivors for Safety and Justice as Amici Curiae on behalf of Petitioner Gerald John Kowalczyk.

Arnold & Porter Kaye Scholer, Carmen Lo, Jocelyn Porter and Steven M. Gentine for Human Rights Watch as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

Martin F. Schwarz, Public Defender (Orange), Laura Jose, Chief Deputy Public Defender, Adam Vining, Assistant Public Defender, and Alexander Bartel, Deputy Public Defender, for the Orange County Public Defender's Office as Amicus Curiae on behalf of Petitioner Gerald John Kowalczyk.

Stephen M. Wagstaffe, District Attorney, Bryan Abanto and Joshua Martin, Deputy District Attorneys, for Real Party in Interest the People.

Greg D. Totten; and Sean Daugherty, Deputy District Attorney (San Bernardino), for the California District Attorneys Association as Amicus Curiae on behalf of Real Party in Interest the People.

Kent S. Scheidegger and Kymberlee C. Stapleton for the Criminal Justice Legal Foundation as Amicus Curiae on behalf of Real Party in Interest the People.

Brooke Jenkins, District Attorney (San Francisco), Ana M. Gonzalez, Chief Assistant District Attorney, Allison Garbutt Macbeth, Assistant Chief District Attorney, Joseph J. Frislid, Christopher F. Gauger, Natalie Fuchs and Nicholas J. Hunt, Assistant District Attorneys, for the San Francisco District Attorney as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marsanne Weese
Rose Mishaan
Law Offices of Marsanne Weese
255 Kansas Street, Suite 340
San Francisco, CA 94103
(415) 565-9600

Joshua Martin
Deputy District Attorney
400 County Center, 3d Floor
Redwood City, CA 94063
(650) 363-4751